IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KAYLEM J. COOPER,

       Plaintiff,                 No. CIV S-06-2067 GGH

   vs.

MICHAEL J. ASTRUE,          ORDER
Commissioner of
Social Security,

       Defendant.
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's Motion for Summary Judgment is denied, and the Commissioner's Motion for Summary Judgment is granted.  The Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

       Plaintiff, born July 11, 1962, applied for disability benefits on November 29, 2004, with protective filing date of November 5, 2004.  (Tr. at 53, 170.)  Plaintiff alleged he was unable to work since October 1, 2004, due to carpal tunnel syndrome, nerve damage in the wrists

1

and elbows, and seizures.  (Tr. at 53, 170, 59.)  In a decision dated May 26, 2006, ALJ Daniel

Heely determined that plaintiff was not disabled.[1]  The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: carpal tunnel syndrome and seizure disorder (20 CFR § 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit, stand and/or walk for six hours each in an eight hour workday.  He can lift, carry, push and/or pull ten pounds frequently and twenty pounds occasionally.  The claimant can climb, balance, stoop, kneel, crouch and crawl frequently but should climb ladders, ropes or scaffolds only occasionally.  He can fell [sic] and finger occasionally with the bilateral upper extremities.  The claimant should avoid exposure to hazards such as unprotected heights or moving machinery.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on July 11, 1962 and was forty-two years old on the alleged disability onset date, which is defined as a younger individual 18-44 (20 CFR § 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.   The claimant has not been under a "disability," as defined in the Social Security Act, from October 1, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 13-17.)

ISSUES PRESENTED

Plaintiff has raised the following issues: (A) Whether the ALJ's Finding That Plaintiff's Sole Manipulative Limitation is a Limitation to Feeling and Fingering Occasionally With the Left Upper Extremities is not Based on Substantial Evidence; (B) Whether the ALJ Erred in Failing to Sustain His Burden of Establishing That There is Other Work in the National

\\\\\

1  Economy That Plaintiff Can Perform; and (C) Whether the ALJ Failed to Adequately Evaluate

2  Plaintiff's Subjective Complaints.

3  LEGAL STANDARDS

4          The court reviews the Commissioner's decision to determine whether (1) it is

5  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

6  the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

7  Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v.

8  Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might

9  accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

10  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

11  (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical

12  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

13  2001) (citations omitted). "Where the evidence is susceptible to more than one rational

14  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

15  Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

16  ANALYSIS

17      A.  The ALJ's Findings Regarding Plaintiff's Manipulative Limitations Are Proper and

18  Based on Substantial Evidence

19          Plaintiff claims that the ALJ's finding that plaintiff could do light work with the

20  only manipulative limitation being only occasional fingering and feeling activities in the left

21  upper extremities, is inconsistent with the limitations found by physicians in the record.

22          To be precise, the ALJ made the following formal finding:

23      5.      After careful consideration of the entire record, the undersigned
                finds that the claimant has the residual functional capacity to sit,
24              stand and/or walk for six hours each in an eight hour workday.  He
                can lift, carry, push and/or pull ten pounds frequently and twenty
25              pounds occasionally.  The claimant can climb, balance, stoop,
                kneel, crouch and crawl frequently but should climb ladders, ropes
26              or scaffolds only occasionally.  He can fell [sic] and finger

4

occasionally with the bilateral upper extremities.  The claimant
should avoid exposure to hazards such as unprotected heights or
moving machinery.

(Tr. at 14.)

The ALJ separately stated that he was giving substantial weight to the opinions of

Dr. McIntire and the state agency doctor that plaintiff could do "light work with manipulative

limitations."  (Id. at 15.)  As a result, he added the following limitations to those stated in the

formal finding.  "He should avoid power gripping activities and should not perform fingering or

feeling activities more than occasionally."  (Id. at 15.)   Later in his decision, the ALJ added that

plaintiff had "no limitation on reaching or handling."  (Id. at 17.)

Plaintiff claims that these above stated limitations are not consistent with those of

consultant Dr. McIntire, and the ALJ was required to set forth clear and convincing reasons to

reject this neurologist's opinion.  There is no purpose in analyzing an alleged rejection of this

physician's opinion as the ALJ did not reject it but in fact gave it significant weight, and the

ALJ's findings are consistent with it.

On February 4, 2005, Dr. McIntire diagnosed bilateral carpal tunnel syndrome and

bilateral ulnar neuropathies, (Id. at 143.)  He stated:

There is weakness in a median as well as an ulnar nerve
distribution bilaterally.  He has a positive Tinel's on the left.  He
retains full strength of the finger flexors.  Given the above
findings, the claimant would have significant functional
limitations.  The claimant should avoid power gripping activities
with the hand.  He should not engage in more than occasional
activities requiring fine continuous rapid finger movements, such
as typing or keyboard work.  He would be able to utilize the hands
for light crude gripping and grasping functions.  In terms of lifting
and carrying, he would be limited to not more than 15 pounds
frequently or 30 pounds occasionally.  The present exam does not
suggest limitations in terms of time sitting, standing or walking. ...
The claimant also has a history of seizures.  He estimates that these
occur approximately once per year.  As a result, the claimant
should also not work at heights or over the water or with very
heavy machinery or other similar capacities....

(Id. at 143.)

5

1    Plaintiff attempts to point out how these limitations differ from those of the ALJ;

2 however, there is no meaningful difference.  Both the ALJ and Dr. McIntire precluded power

3 gripping activities.  The ALJ did limit fingering and feeling to occasionally only.  Dr. McIntire

4 meanwhile, limited plaintiff to only occasional continuous rapid finger movements such as

5 typing or keyboard work.  The two opinions are consistent in regard to fingering which involves

6 working primarily with the fingers, and includes picking, pinching, and feeling an object with the

7 fingertips.  See Social Security Ruling 85-15, 1985 WL 56857 at *7.

8    Dr. McIntire limited plaintiff to light crude gripping and grasping, while the ALJ

9 placed no limit on reaching or handling.  Reaching was not limited by Dr. McIntire so the ALJ's

10 failure to limit reaching is consistent with the doctor's opinion.  See id.  Grasping and handling

11 are synonymous, according to this ruling.  Id.  This is the only limitation where the ALJ and Dr.

12 McIntire differ; however, when their limitations are read as a whole, there is no inconsistency.

13 Dr. McIntire found plaintiff could do light crude grasping (or handling) and gripping.  The ALJ

14 found plaintiff could do handling (or grasping), but did not limit it to light handling.

15 Nevertheless, the ALJ precluded plaintiff from power gripping which reasonably would

16 encompass anything more than light grasping.  Therefore, the ALJ's use of different descriptive

17 terms which have been defined by the SSA to mean the same thing as the terms used by Dr.

18 McIntire does not create an issue.  The ALJ's limitations are consistent with those of Dr.

19 McIntire.

20    Furthermore, the ALJ did state that he placed significant weight on the opinion of

21 the state agency doctor in addition to Dr. McIntire, and this physician did find that plaintiff had

22 no handling restrictions.[2]  (Tr. at 147.)  Plaintiff correctly contends that Dr. McIntire's opinion,

23 as an examining physician, should carry more weight than that of a non-examining physician.

24

25    [2] Plaintiff correctly points out that the Commissioner's briefing mistakenly cites the
report at tr. 144-51 as that of Dr. McIntire when in fact it was completed by Dr. Jaituni, a state
26 agency physician.  (Id. at 151.)  The ALJ did not confuse these reports, however.  (Tr. at 15.)

1  The ALJ did not state whether he was placing more weight on the opinion of Dr. McIntire than

2  that of the SSA doctor, but that he was placing significant weight on both opinions.  He did

3  include all of the limitations placed by Dr. McIntire.  His failure to use the exact terminology

4  used by this consultant is not error.  In any event, "[i]t is not necessary to agree with everything

5  an expert witness says in order to hold that his testimony contains 'substantial evidence.'"

6  Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989), *citing* Russell v. Bowen, 856 F.2d 81,

7  83 (9th Cir.1988) (citation omitted).

8          Dr. McIntire's and the SSA's opinions are consistent with the remainder of the

9  record, as stated by the ALJ.  Dr. Noori treated plaintiff between June, 2003 and May, 2004.  In

10  June, 2003, plaintiff underwent a right carpal tunnel release, with physical therapy following.  (Tr.

11  at 119.)  In May, 2004, plaintiff was still hypersensitive from the surgery.  There was still

12  numbness in the right and left hands.  Plaintiff was not responding to conservative therapy.

13  Plaintiff was referred to another physician for a second opinion on possible left hand carpal

14  tunnel release.  He was found to be totally temporarily disabled at this time.  (Id. at 106.)  This

15  report is quite dated, being over two years old at the time of the ALJ's decision, with no medical

16  treatment records in the file after August, 2004.  These considerations warrant giving this report

17  less weight, along with the finding that plaintiff's disability was temporary.

18          Dr. Porecha saw plaintiff on November 2, 2004.  He diagnosed severe ulnar

19  neuropathy at the wrists, severe swelling bilaterally at the ulnar nerves, and severe bilateral carpal

20  tunnel syndrome.  There was also suggested severe mixed sensory and motor neuropathy with

21  less radial nerve effects.  (Id. at 135.)  This neurologist opined that plaintiff could not return to

22  his past work.  He recommended possible left carpal tunnel release, if not to improve symptoms,

23  then to at least prevent worsening.  He also recommended several medications.  (Id. at 136.)  Dr.

24  Porecha did not evaluate plaintiff's functional limitations.

25          Based on all of the records, the court finds that the ALJ's manipulative limitations

26  are based on substantial evidence.

7

1    B.  Whether the ALJ Should Have Used the Testimony of a Vocational Expert in

2  Determining Plaintiff's Residual Functional Capacity

3         Plaintiff contends that the ALJ should have utilized a vocational expert due to his

4  significant manipulative limitations.

5         The Guidelines in table form ("grids") are combinations of residual functional

6  capacity, age, education, and work experience.  At the fifth step of the sequential analysis, the

7  grids determine if other work is available.  See generally Desrosiers v. Secretary of Health and

8  Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

9         The grids may be used if a claimant has both exertional and nonexertional

10 limitations, so long as the nonexertional limitations do not significantly impact the exertional

11 capabilities.[3] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

12 Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).  The ALJ, however, is not

13 automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional

14 limitation.  Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged

15 does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, §

16 200.00(e)(2) (1996).  The ALJ must weigh the evidence with respect to work experience,

17 education, and psychological and physical impairments to determine whether a nonexertional

18 limitation significantly limits plaintiff's ability to work in a certain category.  Desrosiers 846

19 F.2d at 578 (Pregerson, J., concurring).  "A non-exertional impairment, if sufficiently severe,

20 may limit the claimant's functional capacity in ways not contemplated by the guidelines.  In such

21

22         [3]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
   lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary;
23 Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).  Non-exertional activities include
   mental, sensory, postural, manipulative and environmental matters which do not directly affect
24 the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper,
   880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has
25 an impairment that limits his or her ability to work without directly affecting his or her strength,
   the claimant is said to have nonexertional (not strength-related) limitations that are not covered
26 by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

1   a case, the guidelines would be inapplicable." <u>Desrosiers</u>, 846 F.2d at 577-78.  The ALJ is then

2   required to use a vocational expert. <u>Aukland v. Massanari</u>, 257  F. 3d. 1033 (9th Cir. 2001).

3           In this case, the ALJ concluded that plaintiff was not disabled at step five of the

4   analysis because although he could not do his past work as a machine operator, he could do

5   unskilled light work with manipulative limitations, based on the grids as a framework for

6   decisionmaking.  (Tr. at 16.)  In regard to plaintiff's manipulative limitations, the ALJ found

7   plaintiff could perform feeling and fingering activities occasionally, and should avoid power

8   gripping activities, but had no limit on reaching or handling.[4]  (Tr. at 14, 15, 17.)

9           Plaintiff takes issue with the ALJ's finding that plaintiff's limitations have little or

10  no effect on the occupational base of unskilled light work, citing Social Security Ruling 85-15

11  and Ninth Circuit case law.

12          The pertinent portion of SSR 85-15 states:

13          c. Reaching, handling, fingering, and feeling require progressively
            finer usage of the upper extremities to perform work-related
14          activities.  Reaching (extending the hands and arms in any
            direction) and handling (seizing, holding, grasping, turning or
15          otherwise working primarily with the whole hand or hands) are
            activities required in almost all jobs.  Significant limitations of
16          reaching or handling, therefore, may eliminate a large number of
            occupations a person could otherwise do. Varying degrees of
17          limitations would have different effects, and the assistance of a VS
            may be needed to determine the effects of the limitations.
18          "Fingering" involves picking, pinching, or otherwise working
            primarily with the fingers.  It is needed to perform most unskilled
19          sedentary jobs and to perform certain skilled and semiskilled jobs
            at all levels of exertion. As a general rule, limitations of fine
20          manual dexterity have greater adjudicative significance--in terms
            of relative numbers of jobs in which the function is required--as the
21          person's exertional RFC decreases.  Thus, loss of fine manual
            dexterity narrows the sedentary and light ranges of work much
22          more than it does the medium, heavy, and very heavy ranges of
            work.  The varying degrees of loss which can occur may require a
23          decision-maker to have the assistance of a VS.  However, a VS
            would not ordinarily be required where a person has a loss of

24

_____

25          [4]  The ALJ also limited plaintiff's activities due to his seizure disorder, precluding him
     from working at unprotected elevations or near dangerous moving machinery, and limiting him
26   to only occasional climbing of ladders, ropes, or scaffolds.  (Tr. at 14, 17.)

                                                    9

1    ability to feel the size, shape, temperature, or texture of an object
     by the finger-tips, since this is a function required in very few jobs.
2

3        SSR 83-10 should be read in conjunction with the SSR 85-15.  It states that light

4    work requires "some pushing and pulling of arm-hand or leg-foot controls," and that "[m]any

5    unskilled light jobs ... require use of arms and hands to grasp and to hold and turn objects, and

6    they generally do not require use of the fingers for fine activities to the extent required in much

7    sedentary work."  Additionally, SSR 83-14 states in part:

8        [M]any unskilled light jobs do not entail fine use of the fingers.
         Rather, they require gross use of the hands to grasp, hold, and turn
9        objects.  Any limitation on these functional abilities must be
         considered very carefully to determine its impact on the size of the
10       remaining occupational base of a person who is otherwise found
         functionally capable of light work.
11

12       As these rulings demonstrate, there is a wide range of light work that requires

13   grasping, holding, and turning, all of which the ALJ properly found could be performed by

14   plaintiff, as based on substantial medical evidence.  See discussion Section A, supra.  Since

15   plaintiff has no limitation on handling, no jobs are eliminated on this basis.  The fact that plaintiff

16   can not do power gripping has no impact here, as light work does not require it.  Even though

17   plaintiff can do only occasional fingering, light work generally does not require this type of

18   activity to the extent that sedentary work does.

19       Plaintiff contends that his significant manipulative limitations alone require

20   vocational testimony, citing Fife v. Heckler, 767 F.2d 1427 (9th Cir. 1985).  In Fife the Ninth

21   Circuit held that it was improper to apply the Medical-Vocational Guidelines or "grids" to find

22   the claimant not disabled when the claimant was limited to sedentary work and had a permanent

23   injury to one hand "which precludes jobs requiring bilateral manual dexterity and thus

24   significantly compromises the only range of work for which he is otherwise qualified."  Fife,

25   supra, 767 F.2d at 1430.  However, in the present case, plaintiff was not limited to sedentary

26   work.  Because the record shows that plaintiff could do light grasping, handling, occasional

                                                    10

1  fingering, and all of the other requirements of light work, except for limitations based on his

2  seizure disorder, the ALJ properly determined that plaintiff could perform a wide range of light

3  work, and applied the grids to find him not disabled.

4          In <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1341 (9th Cir. 1988), another case relied on

5  by plaintiff, the ALJ had found that plaintiff had significant mental and manipulative

6  nonexertional limitations, including avoiding stressful environments, and preclusion from using

7  hands in fine manipulation on a regular basis, as well as vision problems.  Having so found, he

8  was required to obtain vocational testimony but failed to do so.  In contrast, the ALJ here did not

9  find significant nonexertional limitations.  Plaintiff is only precluded from power gripping and is

10 limited to occasional fingering and feeling.  Although the issue is close, these limitations are not

11 sufficiently significant for light work situations and do not warrant a departure from the grids.

12 <u>See</u> <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1462, n.3(10th Cir. 1987) (finding that plaintiff need not be

13 able to perform all jobs within a particular range of work, but must be able to do a substantial

14 majority of them).  <i>Cf.</i> <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573, 580

15 (9th Cir. 1988) (holding that to extent that a plaintiff can only do <i>some</i> of the range of work, the

16 ALJ must use a vocational expert) (emphasis added).

17         The ALJ's use of the Guidelines was proper, and the evidence shows no need for

18 vocational testimony.

19    C.  <u>Whether the ALJ Erred in Failing to Consider Plaintiff's Subjective Complaints of</u>

20 <u>Pain</u>

21         Plaintiff next asserts that the ALJ failed to consider plaintiff's subjective

22 complaints of pain.

23         The ALJ determines whether a disability applicant is credible, and the court defers

24 to the ALJ who used the proper process and provided proper reasons.  <u>See</u>, <u>e.g.</u>, <u>Saelee v. Chater</u>,

25 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

26 credibility finding.  <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad v.</u>

1  <u>Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

2  supported by "a specific, cogent reason for the disbelief").

3         In evaluating whether subjective complaints are credible, the ALJ should first

4  consider objective medical evidence and then consider other factors.  <u>Bunnell v. Sullivan</u>, 947

5  F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible

6  solely because objective medical evidence does not quantify them.  <u>Id.</u> at 345-46.  If the record

7  contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ

8  then considers the nature of the alleged symptoms, including aggravating factors, medication,

9  treatment, and functional restrictions.  <u>See id.</u> at 345-47.  The ALJ also may consider the

10 applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

11 inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

12 and (3) daily activities.[5]  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996); <u>see</u> <u>generally</u>

13 SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

14 and third party testimony about nature, severity, and effect of symptoms, and inconsistencies

15 between testimony and conduct, may also be relevant.  <u>Light v. Social Security Administration</u>,

16 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations,

17 <u>see</u> <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

18 medical diagnosis.  <u>Marcia v. Sullivan</u>, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent

19 affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

20 must be clear and convincing.  <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595,

21 599 (9th Cir. 1999).

22 \\\\\

23

24    [5] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

25 any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled."  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001)

26 (quotation and citation omitted).

Here, the ALJ reviewed all the reasons he thought plaintiff's complaints of pain were not entirely credible.  First, he noted that the medical record contained gaps indicating that plaintiff had not seen a treating physician for two years prior to the decision, and had not taken any medications for his carpal tunnel syndrome.  (Tr. at 15.)   As to these two points, plaintiff contends that inability to pay for treatment cannot constitute grounds for rejection of a plaintiff's complaints.  In support, plaintiff cites to his April 3, 2006 hearing testimony wherein he testified that he had just started receiving Medical.  (Tr. at 196.)  Plaintiff, however, did not testify that this was the reason he had not seen a regular doctor in two years and had not taken medication. (Id. at 195-96.)  In any event, plaintiff's citation to Regennitter v. Commissioner of Soc. Sec. Admin., 166 F.3d 1294 (9th Cir. 1999), must be squared with Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), which permits the ALJ to consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  Here, plaintiff did not fully explain why he did not see a physician since August, 2004, or take medications for his carpal tunnel syndrome.  In fact, plaintiff reported to Dr. Porecha in November, 2004, that he was not taking any prescription medication but only over the counter medicines, which would indicate that he could afford some medicine and that his pain was not as severe as described.  (Tr. at 129.) As of February 4, 2005, the most recent medical record in the file, plaintiff reported to Dr. McIntire that his only medication (prescribed or otherwise) was Dilantin for seizures, which by the way, adequately controlled the seizures, which were infrequent.[6]  (Tr. at 141, 15.)  He was taking no pain medication at that time.  Previously in 2004, plaintiff reported to Dr. Porecha that he took Tylenol or Advil occasionally.  (Id. at 130.)  Furthermore, the fact that plaintiff could not afford medical care, by itself, is not sufficient to warrant overturning the ALJ's credibility

\\\\\

\\\\\

---

[6] Plaintiff also objects to the ALJ's failure to discuss nervousness as a side effect of this medication; however, this problem does not appear to be significant.  See (tr. at 64.)

1    analysis.  Social Security Ruling 82-59[7] "only appl[ies] to claimants who would otherwise be

2    disabled within the meaning of the Act."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).

3    The ALJ made a specific finding that plaintiff was not disabled without regard to his failure to

4    seek treatment.  In light of plaintiff's complaints of extreme pain, the ALJ found these failures in

5    treatment to be implausible.  (Tr. at 15.)

6    \\\\\

7    ───────────────────────────

8        [7]  SSR 82-59 provides in relevant part (emphasis added):

9        Individuals with a disabling impairment which is amenable to treatment that could be
     expected to restore their ability to work must follow the prescribed treatment to be found
     under a disability, unless there is a justifiable cause for the failure to follow such

10   treatment ...

11       The underlying regulation, 20 C.F.R. § 416.930 (and companion regulation 20
12   C.F.R. § 404.1530 under Title II) similarly provides:

13       (b) When you do not follow prescribed treatment.  If you do not follow the prescribed
     treatment without a good reason, we will not find you disabled ...

14       Both 20 C.F.R. § 416.930 and SSR 82-59 identify specific acceptable reasons for
15   declining to following prescribed treatment, none of which are present here.

16       20 C.F.R. § 416.930(c) sets forth the following examples of acceptable reasons for
     declining to following prescribed treatment:

17           (1) The specific medical treatment is contrary to the established
             teaching and tenets of your religion.
18           (2) The prescribed treatment would be cataract surgery for one eye when
             there is an impairment of the other eye resulting in a severe loss of vision
19           and is not subject to improvement through treatment.
             (3) Surgery was previously performed with unsuccessful results and the
20           same surgery is again being recommended for the same impairment.
             (4) The treatment because of the enormity (e.g. open heart surgery),
21           unusual nature (e.g. organ transplant), or other reason is very risky
             for you; or
22           (5) The treatment involves amputation of an extremity, or a major
             part of an extremity.

23       Additional acceptable reasons for declining to following prescribed treatment set forth in
24   SSR 82-59 are:

25           (1) Fear of surgery;
             (2) Inability to pay for prescribed treatment;
26           (3) A medical source has advised against the treatment.

1          The ALJ next noted that no physician found plaintiff to be disabled or to have any

2    greater limitations than he found.  As discussed in the previous section, this court has found the

3    ALJ's limitations to be consistent with those of Dr. McIntire and the SSA physician.  Although

4    Dr. Noori found plaintiff to be temporarily totally disabled, this opinion was given on May 21,

5    2004, two years prior to the ALJ's decision.  (Id. at 106.)  Dr. Porecha definitively stated that

6    plaintiff could not do his past work, but did not opine as to plaintiff's disability or limitations,

7    other than to suggest further surgery (left carpal tunnel release) and medications, which advice

8    was not followed.

9          Plaintiff contends that the state agency physician found plaintiff to be credible, (tr.

10   at 153), yet the obvious question is how accurate could this assessment be based solely on review

11   of records?

12         The ALJ also noted that plaintiff stopped working for reasons other than his

13   impairment, referring to evidence that plaintiff lost his job when the company where he worked

14   for 18 years went out of business.  (Id. at 15.)  One explanation in the record is plaintiff's

15   statement to Dr. Porecha in November, 2004, that he had carpal tunnel surgery in June, 2003, and

16   was off work for six months to recover and obtain physical therapy.  During that time, his

17   employer shut the plant where he worked, and he had not been back to work since then.  (Id. at

18   128-29.)  In response to the ALJ's question at hearing why plaintiff stopped working at the steel

19   company, plaintiff testified that it was because the plant closed down.  He explained that he did

20   not do any other jobs after that because "I couldn't do anything else." (Tr. at 193.)  It is true that

21   plaintiff had an excellent work record of 18 years with the same company; however, the ALJ had

22   that evidence before him along with other adverse evidence.  "Credibility determinations are the

23   province of the ALJ."  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995).  In this regard,

24   questions of credibility and resolutions of conflicts in the testimony are functions solely of the

25   [Commissioner].  See Yuckert v. Bowen, 841 F.2d 303, 307 (9th Cir. 1988); Sample v.

26   Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)."  Morgan v. Apfel, 169 F. 3d at 599.

                                           15

1    Although the ALJ did not discuss plaintiff's daily activities, the record supports a

2    level of activity inconsistent with the disabling type of pain alleged.  Plaintiff reported to Dr.

3    McIntire that he does housework, and he reported to Dr. Porecha that he had difficulty grasping

4    and opening jars, and lifting a mug of coffee.  (Tr. at 141, 129.)  He also noted in his Disability

5    Report that he can shower, dress and feed himself, but he drops things "all the time" so he needs

6    help carrying things.  (Tr. at 80.)  These reports support the ALJ's finding of an ability to do

7    work requiring gross motor skills but with some limitations on fine motor skills.

8    The ALJ properly analyzed the evidence relating to plaintiff's pain in relation to

9    the appropriate factors required by the <u>Bunnell</u> line of cases.

10   <u>CONCLUSION</u>

11   The court finds the ALJ's assessment is supported by substantial evidence in the

12   record and based on the proper legal standards.  Accordingly, plaintiff's Motion for Summary

13   Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED,

14   and the Clerk is directed to enter Judgment for the Commissioner.

15   DATED: 02/21/08

                                                      /s/ Gregory G. Hollows

16                                                   _____

17                                                   GREGORY G. HOLLOWS
                                                     U.S. MAGISTRATE JUDGE

     GGH/076
18   Cooper2067.ss.wpd

19

20

21

22

23

24

25

26